SHERWOOD v. MOELLE

(*Circuit Court, D. Nebraska.* October 29, 1888.)

VENDOR AND VENDEE—BONA FIDE PURCHASERS—QUITCLAIM DEEDS.
 A grantee in a warranty deed, whose grantor has a warranty deed, and who acts in good faith, and without actual notice, is entitled to protection as a *bona fide* purchaser, notwithstanding the existence of a quitclaim deed in the chain of title.[1]

In Equity.
On rehearing.[2] Bill by James K. O. Sherwood against Theodore J. Moelle to remove cloud from title.
 Before BREWER, Circuit Judge, and DUNDY, District Judge.
 *Montgomery & Jeffrey*, for plaintiff.
 *Harwood, Ames & Kelly*, for defendant.

BREWER, J. This case is now submitted on petition for rehearing. When first submitted it was decided upon the proposition that one who takes title by a mere quitclaim deed cannot be considered a *bona fide* purchaser, and a decree was ordered accordingly in favor of the defendant and cross-complainant. In this petition for rehearing that proposition is challenged, as well as its application to the facts in this case. Of the soundness of the proposition as a general one I have no doubt, although it may be possibly subject to some limitations. It has been recognized

---

[1] As to the rights of a grantee of land under a quitclaim deed, or in whose chain of title there is a quitclaim deed, see Lumber Co. v. Hancock, (Tex.) 7 S. W. Rep. 724, and note; Gest v. Packwood, 34 Fed. Rep. 368, and note; O'Neal v. Seixas, (Ala.) 4 South. Rep. 745, and note.
[2] No opinion was filed on the original hearing.

by many courts, and frequently affirmed by the supreme court of the United States. In the recent case of *Johnson* v. *Williams*, 37 Kan. 179, 14 Pac. Rep. 537, Mr. Justice VALENTINE, who is one of the most painstaking and thoughtful judges I know, has collated the various authorities, and in the following guarded language states the conclusions of himself and the other members of that court, as well as the principal reasons in support of the proposition:

" We would think that in all cases, however, where a purchaser takes a quitclaim deed, he must be presumed to take it with notice of all outstanding equities and interests of which he could, by the exercise of any reasonable diligence, obtain notice from an examination of all the records affecting the title to the property, and from all inquiries which he might make of persons in the possession of the property, or of persons paying taxes thereon, or of any person who might, from any record or from any knowledge which the purchaser might have, seemingly have some interest in the property. In nearly all cases between individuals, where land is sold or conveyed, and where there is no doubt about the title, a general warranty deed is given; and it is only in cases where there is a doubt concerning the title that only a quitclaim deed is given or received. Hence, when a party takes a quit-claim deed, he knows he is taking a doubtful title, and is put upon inquiry as to the title. The very form of the deed indicates to him that the grantor has doubts concerning the title; and the deed itself is notice to him that he is getting only a doubtful title. Also as a quitclaim deed can never of itself subject the maker thereof to any liability, such deeds may be executed recklessly, and by persons who have no real claim, and scarcely a shadow of claim to the lands for which the deeds are given; and the deeds may be executed for a merely nominal consideration, and merely to enable speculators in doubtful titles to harass and annoy the real owners of the land; and speculators in doubtful titles are always ready to pay some trifling or nominal consideration to obtain a quitclaim deed."

I do not care, however, to enter into a discussion of that general proposition, or consider what, if any, limitations thereof exist. That proposition is, I have stated, that no one who takes under a quitclaim deed can be considered a *bona fide* purchaser. The idea underlying the proposition is that when his grantor. is willing to give him only a quitclaim deed, he impliedly notifies him that there may be outstanding equities, and that he is willing to place him only in the same position which he himself holds. Now, in the case at bar the complainant took under a warranty deed. His immediate grantor also took under a warranty deed. It is true, in the chain of title of record there appeared a quitclaim deed, but it was back of his immediate grantor's deed; and the question is whether, if remotely, in the chain of title there exists a quitclaim deed, subsequent purchasers in good faith lose the protection of the apparently valid and clear deraignment of title from the government by reason of the existence of such quitclaim deed. In view of the fact that in the early history of titles in the west many conveyances were by quitclaim this question becomes important. Fortunately for this case the question has been before the supreme court of this state, and determined. Such determination is doubtless controlling in this court. Even if the question were an open one, there are many substantial and weighty reasons for upholding the conclusions reached by that supreme court. I merely

content myself with quoting its language as found in the case of *Snowden* v. *Tyler*, 31. N. W. Rep. 661, as follows:

"3. It is claimed that the quitclaim deed from Shirk to Poe conveyed no title, and that *bona fide* purchasers from Poe were not protected. The rule no doubt is that a person who procures of another real estate, and receives a quitclaim deed only therefor, is bound to inquire and ascertain at his peril what outstanding equities exist, if any, against the title. The reason is his grantor will not warrant the title, even as against himself. Therefore it is a cause of suspicion. We are not prepared to hold, however, that a quitclaim deed, where the grantor has already conveyed, will not in any case convey title. It is not unreasonable to suppose that a quitclaim deed occurs in many titles where there is no outstanding equity. In this case the quitclaim deed in question was made by Shirk to Poe to supply a deed which was supposed to have been lost. It was made to the grantee of such of the heirs of Snowden as were of lawful age. Shirk, upon the record of Otoe county, apparently possessed the legal title to the land in controversy, and a conveyance from him to Poe, although in the form of a quitclaim deed, in form, at least, transferred the legal title to Poe. No one seems to have been in possession of the land, nor had any charge of the same; and the fact that more than eight years had elapsed from the time of the execution of the deed from Shirk to Snowden without the same having been recorded, certainly was a strong circumstance tending to show that the title still remained in Shirk. It is the policy of the law that titles to real estate should become matters of certainty, as far as possible, and that one who acts in good faith in purchasing, and pays the value of the property, shall be protected in his purchase. Any other rule would operate to prevent settlement and improvements upon lands. A party, therefore, who finds a complete chain of conveyances from the original grantee to his grantor upon the proper records of the county may rely thereon, provided he has no notice, either actual or constructive, of the equities affecting the title, and is a purchaser for a sufficient consideration. All those persons, therefore, who purchased from D'Gette and Warren, without notice, for valuable consideration, and their grantees, will be protected."

It may be added that the testimony clearly shows that the complainant acted in good faith, in ignorance of the outstanding title not apparent of record, and paid full value for the land, while, on the other hand, the defendant paid much less than the value, and probably bought with notice of complainant's rights. For these reasons the petition for rehearing is sustained, and a decree entered in favor of the complainant, quieting his title as prayed.

DUNDY, J., concurring.